[Cite as *State v. Harrison*, 2026-Ohio-3122.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :
                                     No. 116698
    v.                                            :

CHRISTOPHER PATRICK HARRISON, :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED; VACATED; REMANDED
**RELEASED AND JOURNALIZED:** August 7, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-26-709037-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Daniel T. Van and Michael R. Wajda, Assistant Prosecuting Attorneys, and Alexander Munster, Legal Intern for Cuyahoga County Prosecutor's Office, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} In this interlocutory, expediated appeal, defendant-appellant Christopher Patrick Harrison ("Harrison"), appeals the Cuyahoga County Court of

Common Pleas decision ordering the involuntary administration of antipsychotic medication. He raises the following assignments of error for review:

> **Assignment of Error I:** The forced medication order is in error as the record does not support a finding that [Harrison] is incompetent to stand trial.

> **Assignment of Error II:** The trial court erred by holding a hearing on forced medication without [Harrison] being present and without addressing his motion to disqualify counsel, and it erred by accepting a stipulation under those circumstances.

> **Assignment of Error III:** The trial court's forced medication order is not supported by the record and thus violates [Harrison's] State and Federal Constitutional rights to due process.

> **Assignment of Error IV:** Counsel was constitutionally ineffective in waiving [Harrison's] right to be present and in stipulating to the reports, depriving him of his rights under the Sixth and Fourteenth Amendments.

{¶ 2} For the reasons set forth below, we reverse the trial court's judgment, vacate the forced-medication order, and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

{¶ 3} The following is a summary based on the limited record before us.

{¶ 4} On January 21, 2026, Harrison was arrested for alleged criminal offenses against a family member. An eight-count indictment was returned a week later. Harrison was charged with multiple felony and misdemeanor offenses.

**{¶ 5}** On February 3, 2026, Harrison was arraigned, found to be indigent, and assigned counsel.[1] According to the docket, the State provided electronic discovery pursuant to Crim.R. 16 on February 4, 2026. The first pretrial was held on February 12, 2026.

**{¶ 6}** Two weeks later, on February 26, 2026, a second pretrial was held wherein the parties went on the record at defense counsel's request. Defense counsel then informed the court that she met with Harrison on February 10, 2026. She stated that at that time they were not in receipt of any discovery; consequently, she answered Harrison's questions regarding his bond and went over the indictment, some procedural matters, and courtroom scheduling matters with him.

**{¶ 7}** Defense counsel also informed the court that she met with Harrison again on February 24, 2026, and indicated that they had a productive meeting. However, she was concerned because the next day she received a voicemail from Harrison detailing his dissatisfaction with her representation, explaining her failure to communicate effectively with him, and requesting that she be removed as his counsel and appointed new counsel. Counsel then stated, "Frankly, Judge, I know that there's probably been some matters that I myself could have handled better, but I don't see moving forward having issues communicating with Mr. Harrison. We were able to review discovery today. I don't think that our relationship has

---

[1] We note for the record that Harrison's appellate attorney was not his attorney at the trial-court level.

completely disintegrated to the point where I can't represent him effectively." (Tr. 4-5.)

**{¶ 8}** Defense counsel then requested a competency and sanity evaluation and any eligibility relating to him being put on the mental health court docket. She ended by saying that she would leave the decision to Harrison and the court.

**{¶ 9}** The trial court asked Harrison if he had anything to say. Harrison responded:

> The only thing [is,] the issues that I had from the beginning is the arraignment, I had a lawyer represent me that wasn't aware of what was going on because I've never been arrested before, and when that happened, they set the bond at 50,000 and I have an apartment, residency out of state. I also have a job up here, too, and down there, but up here, I've been working up here, and all I wanted to do was to get that bond lowered to see if I could go get my affairs in order before I got to be put in this position to get incarcerated or whatever. And since I've been incarcerated, I've been trying to get my affairs in order, but you can't really do anything from a jail cell or a phone. So, between my job and my vehicle and my residence, they're all dwindling away and stuff as I stay here. So, I have no communication or anybody to speak on my behalf because I'm the only one that can do that.
>
> So, that's one issue that I'm having. And the communication with her is because I was just sitting in there and didn't know what was going on. I've never been arrested before, never had any issues with the law or anything like that, and I just want a fair chance and a fair trial and fair representation for my future going forward and stuff because I am a law-abiding citizen, and I also understand where I am at with everything and I know that I'm in jail and all that stuff, and I just want to let the courts know and you, Your Honor, is that I just want to go moving forward not to be difficult or anything like that, but, like I said, I'm new to this process and I'm unaware of a lot of things and I've also been getting a little bit of misinformation, not really inside but outside. I'm being told different things and stuff from people I was communicating with outside. So, it's kind of a little bit new to me.

(Tr. 5-7.)

{¶ 10} The trial court assured Harrison that he has a great attorney and pointed out that "you didn't bring up getting a new attorney at this time so that's off the table." (Tr. 7.) The trial court then explained that if he cooperates with the competency and mental-health evaluation, it will expedite the process and if he does not it will slow everything down because he could be sent "to another facility to be assessed." (Tr. 7.)

{¶ 11} Harrison then asked the court if he could revisit the issue regarding appointment of new counsel. The trial court assured him, "Sure. You can always bring that up to the Court, and we will always talk about it." (Tr. 8.)

{¶ 12} On February 26, 2026, the trial court referred Harrison for the evaluations requested and included in the order that the county jail is to provide numerous records to the psychiatric clinic including but not limited to Harrison's medical records, jail records, mental-health records, incident reports, and summaries of any disciplinary reports. According to the doctor, the jail did not provide these documents to the Court's Psychiatric Clinic. The doctor interviewed Harrison and issued an opinion finding that Harrison was incompetent to stand trial.

{¶ 13} On March 20, 2026, the State and defense counsel stipulated to the Court Psychiatric Clinic's report finding Harrison to be incompetent to stand trial and that he was capable of being restored to competency within the statutory timeframe pursuant to R.C. 2945.38(B). No hearing was held. The docket does not reflect whether Harrison was present for this stipulation.

{¶ 14} Importantly, the report noted that although Harrison suffered from a present mental condition, it did not cause him to be incapable of understanding the nature of the proceedings against him.  Nevertheless, the doctor opined that because of his mental condition, he was unable to assist in his defense.  The basis provided by the evaluator for this conclusion includes that Harrison demonstrated an inability to work with his current attorney, exhibited paranoid thought processes and feelings of mistrust toward his attorney, consistent with his attorney's reporting, where counsel expressed difficulties in her ability to communicate with him and possible paranoia toward her.  The doctor opined that Harrison did not demonstrate the ability to engage in a discussion to assess his understanding of the strength of potential evidence that could be used against him, or engage in conversation to assess his understanding of the likely outcomes of hypothetical cases based on the type of evidence involved.  Harrison had not been determined to be dangerous to himself or others.

{¶ 15} The trial court accepted the parties' stipulation and ordered Harrison to Northcoast Behavioral Healthcare ("NBH") for restoration of competency. Harrison was remanded to the county jail until an opening became available for in-patient treatment at NBH.

{¶ 16} On April 22, 2026, while still in the county jail awaiting transport, Harrison filed a pro se motion to disqualify his counsel.  He attached a handwritten statement explaining the reasons supporting his motion.  Harrison detailed the reasons he wanted his counsel removed and a new counsel appointed.  He stated

that there was a conflict of interest and his attorney was ineffective. He specifically stated that there was a lack of communication, that his attorney volunteered false information on his behalf, and that his attorney had not properly communicated all proceedings of the court. Harrison stated that the pretrials were unproductive and his counsel did not file a motion to reduce bond as requested. He stated that his counsel "[has] her own agenda, being unjust, and not having [his] best interest." (Motion to Disqualify, Apr. 22, 2026.) Harrison cites R.C. 2945.371, which is the statute that sets forth the procedure for evaluations and reports regarding a defendant's mental condition. He alleges that his counsel is not following R.C. 2945.371. Harrison identified his counsel by name and stated that he "has no say in his case nor did she work on his case at all." (Motion to Disqualify, Apr. 22, 2026.)

{¶ 17} A month later, on May 22, 2026, Harrison was transported from the county jail and admitted to NBH for inpatient treatment and restoration of competency to stand trial. In an unfiled letter dated June 12, 2026, NBH petitioned the trial court to authorize the involuntary (forced) administration of prescribed medication contained in the list attached to the reports included in the letter. On June 29, 2026, the docket reflects that an unspecified hearing was scheduled for the following day.

{¶ 18} On June 30, 2026, a forced-medication hearing was called with only the court and counsel present. Harrison was not present. The trial court informed counsel that Harrison refused to attend the zoom hearing. Defense counsel then

waived Harrison's presence "if allowed by the Court." (Tr. 14.) In addition, defense counsel stipulated to the report and recommendation for forced medication of her client. The trial court agreed to waive Harrison's appearance and accepted the stipulation of counsel to the findings and conclusions of the reports from NCBH requesting that Harrison be forcibly medicated to restore him to competency to stand trial. A hearing on the matter was waived.

{¶ 19} The next day, on July 1, 2026, a forced medication order was entered by the court. On July 6, 2026, a notice of appeal was filed on behalf of Harrison. Contemporaneously with his notice of appeal, Harrison also filed a motion to stay the forced medication order with the trial court. Then on July 9, 2026, Harrison filed a motion to stay the order of forced medication with this court. On July 10, 2026, this court granted Harrison's motion to stay. Later that same day, the State filed an entry of appearance and a motion for reconsideration of the stay order to which Harrison filed a response. On July 13, 2026, the trial court granted Harrison's motion to stay.

{¶ 20} Harrison appeals the forced medication order.

## II. Law and Analysis

{¶ 21} Within Harrison's assigned errors he contests the forced medication orders on constitutional and procedural grounds, citing lack of support for incompetency, improper proceedings in his absence, and violations of his due-process rights, including his unaddressed motion to disqualify his counsel. He also asserts that he did not receive effective assistance of the counsel. Harrison claims

that his counsel was ineffective when she stipulated to his incompetency, waived Harrison's right to be present at the forced-medication hearing, and stipulated to the report requesting forced medication. He asserts that he was deprived of his right to be present under the Sixth and Fourteenth Amendments. Specifically, Harrison argues that the involuntary administration of antipsychotic medication implicates a protected liberty interest and that such an order must meet strict due-process standards.

{¶ 22} We review claims that a defendant's due-process rights were violated de novo. *State v. Howard*, 2022-Ohio-2959, ¶ 10 (8th Dist.), citing *In re A.R.*, 2017-Ohio-8058, ¶ 15 (8th Dist.). Indeed, a criminal defendant has a fundamental right to be present at all critical stages of a criminal proceeding. *State v. Hale*, 2008-Ohio-3426, ¶ 100. However, "'the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *Id*. at ¶ 100, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-108 (1934). The question is whether the defendant's presence has a "'reasonably substantial' relationship to 'the fullness of his opportunity to defend against the charge.'" *Id*., quoting *id*. at 105-106.

{¶ 23} The first question we must answer is whether the hearing regarding forced medication to restore someone to competency is a critical stage in a criminal proceeding. To that end, we note that this court has acknowledged that a hearing to determine competency would be considered a critical stage in a criminal proceeding.

*Howard* at ¶ 11.  Moreover, in *State v. Muncie*, 91 Ohio St.3d 440, 445 (2001), the

Ohio Supreme Court stated:

> The United States Supreme Court has noted that the forcible injection
> of antipsychotic medications into a nonconsenting individual's body
> represents a "particularly severe" interference with the interests
> protected by the Due Process Clause.  *Riggins* [*v. Nevada*], 504 U.S.
> [127, 134, (1992)], 112 S. Ct. at 1814, 118 L. Ed. 2d at 488.  Orders
> authorizing the involuntary administration of antipsychotic
> medications permit authorities to alter the cognitive processes
> occurring in the committed defendant's brain, against his or her will,
> using drugs that carry with them the possibility of severe, debilitating,
> and/or permanent side effects.  *Id*. at 134, 112 S. Ct. at 1814-1815, 118
> L. Ed. 2d at 488-489; see, also, *Steele v. Hamilton Cty. Community
> Mental Health Bd*. (2000), 90 Ohio St. 3d 176, 181-182, 736 N.E.2d 10,
> 16 (noting that possible side effects of antipsychotic drugs include
> Parkinsonian syndrome, akathisia, dystonia, and dyskinesia).

*Id*. at 445.  Because forcibly injecting antipsychotic medications into a

nonconsenting defendant represents a particularly severe interference with the

interests protected by the due process clause, we find that a hearing to forcibly

medicate a defendant to restore that person to competency is a critical stage in a

criminal proceeding.

{¶ 24} Next, we must determine whether a fair and just hearing was

thwarted by Harrison's absence thereby violating his due-process rights.

{¶ 25} Harrison argues that it was improper and his due-process rights were

violated when the trial court proceeded with a forced-medication hearing without

his presence.  He challenges the representation made by the trial court that he

refused to attend the zoom hearing based only upon a secondhand report that

Harrison refused to attend, without firsthand testimony or adequate factual support.

{¶ 26} Indeed, the record is devoid of how this information was received by the trial court and from whom. The record is silent as to whether defense counsel met with Harrison prior to the hearing. Additionally, the court's docket reflects that the parties were provided less than twenty hours' notice that an unspecified hearing was even scheduled. The record does not show that Harrison was given the petition from NBH with attached reports requesting that he be forcibly medicated with antipsychotic drugs, which is required by statute.

{¶ 27} The State asserts that even if a forced-medication hearing is considered a critical stage in a criminal proceeding that required Harrison's presence, no error exists because his counsel waived his appearance and a defendant's presence may be waived "even without an express waiver from the defendant appearing in the record," citing *Howard* at ¶ 12.

{¶ 28} We find the State's reliance on *Howard* misguided. In *Howard*, the defendant claimed his due-process rights were violated when he was not present for his competency hearing because it was a critical stage of his criminal proceedings and that he received ineffective assistance of counsel because his counsel waived his presence. Importantly, Howard was evaluated for competency and the report diagnosed him with malingering and cannabis-use disorder. The report noted that Howard was "feigning psychotic symptoms for the secondary gain of avoiding criminal persecution." *Id.* at ¶ 4. At the hearing, Howard's attorney waived his

presence and the parties stipulated that Howard was competent to stand trial. Based on the stipulation and the report, the trial court found that Howard was competent to stand trial. *Id.* at ¶ 5.

{¶ 29} On appeal, this court acknowledged that a competency hearing is a critical stage and that counsel may waive a client's presence even without an express waiver appearing on the record. This court concluded that counsel's waiver of Howard's presence did not violate his due-process rights and he did not receive ineffective assistance of counsel because even if Howard was present for the hearing, there is no evidence that Howard was incompetent. This court concluded that "[w]ithout further indicia of incompetency in the record, we do not find that counsel's waiver of Howard's presence or stipulation to the psychiatric report fall below an objective standard of reasonableness or that the result of the proceeding would likely be different." *Id.* at ¶ 16 (8th Dist.).

{¶ 30} In this case, the situation is starkly different. Here, Harrison asserts that he is competent and he does not need antipsychotic medications. He argues that the record shows he understood the criminal charges and that he had no prior mental-health issues. He argues that his mistrust with counsel and request for her removal alone did not support the finding of incompetence and the involuntary administrative of antipsychotic medications to restore him to competency. In summary, his presence was absolutely necessary.

{¶ 31} Central to the issue of competency and the need for a forced medication order is Harrison's motion to disqualify his counsel and be appointed a

new one because of the significant breakdown of the attorney-client relationship. We note that this motion was pending before the trial court when defense counsel waived Harrison's presence at the forced-medication hearing and stipulated to Harrison being forcibly medicated. The record also reflects that neither defense counsel nor the trial court addressed the motion to disqualify, even though the trial court assured Harrison on February 26, 2026, that if he raised his dissatisfaction with his attorney again, the court would address it. His motion was filed a month before he was transported to NCBH.

{¶ 32} Harrison has a Sixth Amendment right to counsel, which requires more than "that a person who happens to be a lawyer is present at trial alongside the accused"; rather, the accused is "entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant bears the burden of demonstrating proper grounds for the appointment of new counsel. *State v. Hill*, 2018-Ohio-279, ¶ 10 (8th Dist.), citing *State v. Patterson*, 2014-Ohio-1621, ¶ 18 (8th Dist.). "If a defendant alleges facts which, if true, would require relief, the trial court must inquire into the defendant's complaint and make the inquiry part of the record." *Patterson* at ¶ 18, citing *State v. Deal*, 17 Ohio St.2d 17, 20 (1969). The allegations, however, must be specific, not "vague or general." *State v. Johnson*, 2006-Ohio-6404, ¶ 68, citing *State v. Carter*, 128 Ohio App.3d 419, 423 (4th Dist. 1998).

{¶ 33} This court has recognized three examples of "good cause" that warrant the appointment of new counsel:  (1) a conflict of interest; (2) a complete breakdown of communication; and (3) an irreconcilable conflict that could cause an apparently unjust result.  *Hill* at ¶ 11, citing *State v. Davis*, 2014-Ohio-5144, ¶ 12 (8th Dist.).  The "breakdown of communication" in the attorney-client relationship must be "'of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'"  *Id.*, citing *State v. Coleman*, 37 Ohio St.3d 286, 292 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215 (1970).

{¶ 34} Because Harrison's motion to disqualify counsel was not ruled upon, we presume it was denied.  *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467 (1998), syllabus.  We review a trial court's decision whether or not to remove court-appointed counsel for an abuse of discretion.  *Hill* at ¶ 12, citing *Patterson* at ¶ 19.  An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority."  *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 35} Although the State claims that Harrison stated specific reasons in his motion to disqualify and therefore the trial court need not address it, the hand-written statement attached to Harrison's motion shows otherwise.  In his hand-written statement, Harrison, in an organized manner, detailed the reasons he wanted his counsel removed and a new counsel appointed.  He stated that there was a conflict of interest and his attorney was ineffective.  He specifically stated that there was a lack of communication, that his attorney volunteered false information

on his behalf, and that his attorney had not properly communicated all proceedings of the court. Notably, Harrison cites R.C. 2945.371, which is the statute that sets forth the procedure for evaluations and reports regarding a defendant's mental condition. He alleged that his counsel was not following R.C. 2945.371. Harrison stated that the pretrials were unproductive and his counsel did not file a motion to reduce bond as requested. He stated that his counsel "[has] her own agenda, being unjust, and not having [his] best interest." (Motion to Disqualify, Apr. 22, 2026.) Harrison identified his counsel by name and stated that she "has no say in his case nor did she work on his case at all."

{¶ 36} On appeal, Harrison contends that had he been appointed new counsel, he would have avoided a referral for a competency evaluation and hospitalization for restoration of competency. He further argues that he was prejudiced when the trial court failed to hear his motion to disqualify counsel before the forced-medication hearing.

{¶ 37} We agree and find that Harrison's motion clearly articulated a breakdown of communication in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel. Therefore, we find that the trial court abused its discretion when it denied without hearing Harrison's motion to disqualify counsel and appoint new counsel. Because Harrison should have been appointed new counsel, we find that Harrison's due-process rights were violated. Therefore, the forced-medication hearing should not have occurred and a fair and just hearing could not be held in his absence.

**{¶ 38}** Accordingly, Harrison's second and third assignments of error are sustained.

**{¶ 39}** Because we find Harrison's due-process rights were violated, we need not address his first and fourth assignments of error.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR